77 So.2d 402

**STATE of Louisiana**

**v.**

**Clayton Stevens O'BRIEN.**

No. 41790.

Dec. 13, 1954.

Rehearing Denied Jan. 10, 1955.

Girard J. Fernandez, New York City, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Leon D. Hubert, Jr., Dist. Atty., Herbert J. Garon, Asst. Dist. Atty., Malcolm V. O'Hara, Asst. Dist. Atty., New Orleans, for appellee.

LE BLANC, Justice.

Defendant was charged by a Bill of Information with the crime of aggravated burglary. LSA–R.S. 14:60. He was tried and found guilty as charged. Prior to the sentence, the State filed an Information under LSA–R.S. 15:529.1, charging the defendant with being a multiple offender, and the court sentenced him to serve a term at hard labor in the State Penitentiary for thirty years. The accused appeals from the conviction and sentence.

The record contains seven Bills of Exception reserved during the trial, the more serious ones being Numbers 1 and 2.

Bill of Exception No. 1.

Prior to trial, the State moved to amend the Bill of Information. The original Bill read as follows:

"That Clayton Stevens O'Brien, within the jurisdiction of the Criminal District Court for the Parish of Orleans, committed aggravated burglary of the inhabited dwelling of Mr. and Mrs. Edward Vaughn at 8118 Green Street, with intent to commit a theft therein, while armed with a dangerous weapon, to-wit: a sharp instrument, and did commit an aggravated battery with said sharp instrument upon Mrs. Edward Vaughn while in said dwelling and structure."

The amended Information now reads as follows:

"That Clayton Stevens O'Brien, late of the Parish of Orleans, on the first

day of August in the year of our Lord one thousand nine hundred and fifty-one, with force and arms, in the Parish of Orleans aforesaid, and within the jurisdiction of the Criminal District Court for the Parish of Orleans, committed aggravated burglary of the inhabited dwelling of Mr. and Mrs. Edward Vaughn at 8118 Green Street, with intent to commit a theft and forcible felony therein, while armed with a dangerous weapon, to-wit: a sharp instrument, and did commit an aggravated battery with said sharp instrument upon Mrs. Edward Vaughn while in said dwelling and structure, and did commit a battery upon Mrs. Edward Vaughn with a personal part of his body."

The objection to the Bill of Information, as amended, to the effect that the defendant is charged in one count with several crimes, is without merit. Article 222 of the Code of Criminal Law and Procedure, LSA–R.S. 15:222, permits the cumulation, in the same count, of "Several distinct offenses, or the intent necessary to constitute such offenses, disjunctively enumerated in the same law or in the same section of a criminal statute, * * * when it appears that they are connected with the same transaction and constitute but one act, * * *." The only requirement is that in such an event they must be charged conjunctively.

The law or criminal statute under which the accused is charged in this case is embodied in LSA–R.S. 14:60. That section defines the crime of aggravated burglary as being:

"* * * the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony *or* any theft therein, if the offender,

"(1) Is armed with a dangerous weapon; *or*

"(2) After entering arms himself with a dangerous weapon; *or*

"(3) Commits a battery upon any person while in such place, or in entering or leaving such place." (Our emphasis.)

Thus we have a statute in which several distinct offenses are enumerated disjunctively and we have before us an information from which it distinctly appears those of the offenses therein enumerated, and with which the accused is charged, are connected with the same transaction and constitute but one act and since they are charged conjunctively, as required by LSA–R.S. 15:222, the information is not vulnerable to the objection that it includes, in one count, the commission of several crimes.

### Bill of Exception No. 2

Prior to trial counsel for the accused filed a motion for a Bill of Particulars requesting the following information:

(1) "What forcible felony does the state contend the defendant had the intention of committing when he allegedly entered the dwelling as referred to in the Bill of Information?

(2) "What was the sharp instrument referred to in the Bill of Information? Was it a knife, or some glass or tool?

(3) "What part of his body did the defendant use to commit the said battery on Mrs. Vaughn?"

The State refused to answer the first question propounded in the Bill of Particulars. It answered the other two with apparent satisfaction since it is with regard to the refusal to answer the first that defendant's counsel particularly takes exception to the ruling of the trial judge upholding the State's refusal to answer. In support of his objection, counsel relies on LSA–R.S. 15:227, Code of Criminal Law & Procedure, which provides that "The indictment must state every fact and circumstance necessary to constitute the offense, * * *."

■ Counsel's contention is that the accused was entitled to know what was the forcible felony he intended to commit when,

as the State had alleged in the information, he entered the inhabited dwelling with intent to commit one. It would seem that the Bill of Information did inform him of the felony he intended to commit since it avers that he "committed aggravated burglary of the dwelling" which is specifically designated, with intent to commit a forcible felony *therein* "while armed with a dangerous weapon, to-wit: a sharp instrument *and did commit an aggravated battery with said sharp instrument upon Mrs. Edward Vaughn while in said dwelling,* * * *." (Our emphasis.) It strikes us that there the forcible felony alleged is described in detail in just so many words.

■ Moreover, conceding, arguendo, that the Bill of Information did not fully apprise the accused of the "forcible felony" he intended to commit, it is still sufficient to sustain a charge of aggravated burglary because it distinctly avers that he committed an aggravated burglary of the inhabited dwelling "with the intent to commit a theft * * * therein." Entering with intent to commit a theft is also one of the ingredients of the offense designated as "aggravated burglary" as appears from the definition of that crime by LSA–R.S. 14:60, supra. Therefore if the allegation relating to "forcible felony" be eliminated from the Bill of Information the Bill is still valid as one charging that offense. Article 240, LSA–R.S. 15:240 is authority for disregarding the phrase "and forcible felony"

and rejecting it from the Bill of Information as surplusage.

■ We conclude that although the information is couched in a manner, and in language that may be said to be inartistic, it nevertheless is sufficient to inform the accused "of the nature and cause of the accusation against him" in compliance with the requirement of Article I, Section 10 of the State Constitution, LSA. In this respect we think the case is altogether different from those of State v. Celestin, 138 La. 407, 70 So. 342 and State v. Holmes, 223 La. 397, 65 So.2d 890, cited as authority by counsel for the defendant.

## Bill of Exception No. 3

■ This bill was reserved upon the ruling of the trial judge on defendant's motion to elect whether the State would prosecute him for entering with the intention of committing a forcible felony or for entering with the intention of committing a theft.

The contention urged on this motion is answered in our opinion, by LSA–R.S. 15:222 heretofore referred to which permits the cumulation of several distinct offenses, or the intent necessary to commit such offenses, disjunctively enumerated in the same statute, when it appears that they are connected with the same transaction and constitute but one act. In this instance they are charged conjunctively and that is the only requirement prescribed in the statute.

## Bill of Exception No. 4

This bill has reference to a remark of the assistant district attorney in the closing argument before the jury, which, it is contended, had the effect of calling the jury's attention to the fact that defendant had not taken the witness stand in his own behalf to give them the benefit of his appreciation of the facts the assistant district attorney was commenting on at the moment.

We think that the per curiam of the district judge correctly disposes of the contention made and we adopt his reasons for his ruling. They are as follows:

"During the trial the State placed Patrolman Joseph Chopin on the stand and asked him whether the defendant had made any comments to him at the time of his arrest. Officer Chopin testified:

Mr. Garon:

"Q. You know Officer, what was asked of the defendant and what his answers were? A. Yes, sir. I was standing in the living room at the time. The accused denied that he had been in the apartment house or across the street—denied that he had been shot at: denied that he was the man Mr. Vaughn chased or seen previously in the apartment house or across the street."

In his closing argument defense counsel stated to the Jury that it was perfectly normal for O'Brien, the defendant, to have been at the Audrey Apartments that night or early morning because the neighborhood

had been placed in a state of alarm and he was merely investigating a disturbance there; defense counsel also observed to the Jury that it was perfectly natural for the defendant to have run when he was being arrested by a neighbor pointing a .45 caliber revolver at him.

■ The State, noticing the variance between the statement of defendant to Officer Chopin and his Attorney's appreciation of what happened that night had no other way to argue the point than to recall to the Jury's mind that this difference or irreconcilable variance was existent, and asked the Jury "What is Clayton O'Brien's appreciation of this?", meaning that the defendant told a set of facts to the Officer inconsistent with the facts related by his defense counsel. Article 382 of the Criminal Code, now LSA-R.S. 15:382 gives both counsel the right to draw conclusions from the evidence and in this instance the State was merely commenting on the testimony of Officer Chopin, which is part of the record. "However, the Court instructed the Jury to disregard all argument of counsel as not being evidence in the case, notwithstanding the merit of the argument."

### Bill of Exception No. 5

This bill was taken when the Court refused to order a mistrial on motion of counsel for defendant. The motion is based on a statement alleged to have been made by the assistant district attorney while discussing the testimony of the defendant's wife

before the jury, in an attempt to attack her credibility. It is contended that the alleged remark put the character of the defendant at issue when the defendant himself had offered no character testimony in his own behalf and had not himself taken the witness stand.

■ There is considerable controversy over what the actual remark was and whether or not the district attorney completed the sentence he had started to utter before he was interrupted by counsel for defendant. Some confusion arose as to what he had said and in attempting to have the testimony of the minute clerk taken in order to preserve his bill, counsel for defendant upon seeing that there was disagreement between them, told the minute clerk to "forget it" which observation gave the trial judge the impression that the bill had been abandoned. It is apparent that this bill was not perfected and we therefore have nothing before us on which to rule.

### Bill of Exceptions Nos. 6 and 7

■ These bills were taken when the district judge overruled motions for a new trial and in arrest of judgment. They both bear reference to all matters previously discussed in the preceding bills. The only new matter sought to be injected is with regard to the charge of the district judge to the jury in which he instructed the jury on the "law of flight". Counsel, however, did not reserve a bill to what he now urges was an improper instruction and in the

absence of one this Court will not review the matter complained of.

For the reasons stated, the conviction and sentence are affirmed.

MOISE, J., dissents with written reasons.

MOISE, J. (dissenting).

The facts stated in the original opinion are correct. My dissent, therefore, is pitched on the conclusions of law.

The Trial Judge suggested to the counsel for defendant that if he desired any additional information relating to the crime charged he should apply for a Bill of Particulars. This was done, and in filing the Bill of Particulars the accused's counsel asked for this information:

"What forcible felony does the State contend the defendant had the intention of committing when he allegedly entered the dwelling as referred to in the Bill of Information?"

The State answered this question as follows:

"That the nature of the forcible felony is a matter of proof which shall be introduced at the trial of this case, and the State respectfully declines to answer the request."

In the suit of State v. Jacobs, 145 La. 898, 83 So. 183, 184, our Court held:

"Every fact that forms an essential element of the crime intended to be charged must be alleged in the indictment or bill of information."

In the case of State v. Toney, 205 La. 451, 17 So.2d 624, 625, Chief Justice Fournet, makes the following statement:

"It is elementary that the only crimes in this state are statutory and that every fact that forms an essential element of the crime intended to be charged must be alleged with certainty and precision in the accusation, nothing being left to intendment or conjecture. The omission of any essential element of the crime renders the accusation invalid, whether it was brought by indictment, information, or affidavit. State v. Thibodeaux, 136 La. 935, 67 So. 973; State v. Doremus, 137 La. 266, 68 So. 605; State v. Barnette, 138 La. 693, 70 So. 614; State v. Atkins, 142 La. 862, 77 So. 771; State v. Jacobs, 145 La. 898, 83 So. 183; and State v. Halaby, 148 La. 553, 87 So. 270." See, United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113.

In the case of State v. Celestin, 138 La. 407, 70 So. 342, 343, the Court held:

"The rule is well established that although in burglary and statutory housebreaking the intent, as defined by the law, is simply to commit a felony, it is not sufficient in the indictment to follow these general words, but the particular felony intended must be specified. The felony intended need not be set out as fully and specifically as

would be required in an indictment for the actual commission of the felony. It is ordinarily sufficient to state the intended offense generally, as by alleging an intent to steal, or commit the crime of larceny, rape, or arson."

The historical background in the suit of State v. Varnado, 208 La. 319, 23 So.2d 106, is a splendid affirmative of the rights of an accused under Article X of the Constitution of 1921. From page 369 of this decision in 208 La., page 123 of 23 So.2d, we now quote:

"Historically, the right of an accused to be informed in writing of the nature and cause of the accusation against him by the return of an indictment is the result of the assertion of the rights of oppressed peoples against the abuses of the sovereign, and this right has been regarded for centuries as one of the most important securities to the innocent against hasty, malicious, and oppressive prosecutions, as well as one of the immunities and bulwarks of personal liberty. * * * the original thirteen states were cautiously slow to adopt any form of centralized government without positive assurance that the Bill of Rights would be adopted, and it was adopted at the very first session of Congress, in 1789, guaranteeing, among other rights, that an accused shall be informed of the nature and cause of the accusation."

For these reasons, I respectfully dissent.